IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TEKISHA JOHNSON,

              Plaintiff,

vs.                                                             No. CIV 08-1126 JH/LFG

ERIC ERICKSON,
              Defendant.

**MAGISTRATE JUDGE'S ANALYSIS
AND RECOMMENDED DISPOSITION**[1]

This is a *pro se, in forma pauperis* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Tekisha Johnson ("Johnson"). Johnson is currently incarcerated at the New Mexico Women's Correctional Facility in Grants, New Mexico. In her Complaint, Johnson alleges that her former Probation Officer, Defendant Eric Erickson ("Erickson") knowingly submitted false information in support of a warrant for her arrest, that he caused the wrongful issuance of the warrant in order to harass her, and that his actions violated her constitutional rights and caused the loss of her job. She also asserts claims for slander and false imprisonment.

**Factual and Procedural Background**

This case involves incidents occurring in January and February of 2008. Johnson alleges that a warrant for her arrest issued on January 23, 2008 was secured by false information supplied by

---

[1]Within ten (10) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

Defendant Erickson. She claims that Erickson also misled a state district judge, Hon. Neil C. Candelaria, by attempting to have her probation revoked on the basis of alleged probation violations occurring over a year earlier, allegations which had already been rejected in a different case by Hon. Albert S. Murdoch, who declined to revoke Johnson's probation. She claims that Judge Candelaria informed Erickson at the probation violation hearing that he lied and misled the court. [Complaint, Doc. 1].

Johnson alleges that her unjust arrest and subsequent eight days of incarceration resulted in the loss of her job. She claims that Erickson's actions violated her constitutional right to be free from cruel and unusual punishment. She also asserts claims for false imprisonment and libel and slander against Erickson, alleging he called her employer on January 22 or 23, 2008 with malicious intent, to "openly discuss her private business," and as a result, she was terminated from her job. She seeks compensatory and punitive damages. [Id.].

Erickson denies the allegations and asserts affirmative defenses, including qualified immunity, arguing that his actions "had a valid, rational connection to legitimate penological interests and were carried out in the good-faith performance [of his duties] . . . under state law and NMDC policies." [Answer, Doc. 13].

The Court ordered Erickson to produce a report pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978) to develop the factual and legal basis for determining whether Johnson has a meritorious claim. The Court advised the parties that the Martinez report could be used for summary judgment purposes. [Doc. 17]. Erickson filed his Martinez report [Doc. 19] on July 13, 2009 and a Supplement thereto [Doc. 20] on July 28, 2009. Johnson filed two Responses to the report [Docs. 21, 22] on August 10 and 13, 2009.

Johnson's allegations center around two state court criminal cases. Following is a review

of the chronology of the two cases.

**A.** *Judge Murdoch's Case:  Cause No. 02-2289*

On July 23, 2002, Johnson was indicted by a state grand jury on one count of fraud and four counts of passing worthless checks, in violation of N.M.S.A. (1978) §§ 30-16-6 and 30-36-4 [Docket Sheet in Tekisha Johnson, No. D-202-CR-200202289].[2]  On March 26, 2003, Johnson pled guilty to counts 1-3 of the indictment in that case.  As part of the plea agreement, counts 4 and 5 were dropped, along with charges that had been brought in two other cases.[3]  On March 27, 2003, the three cases were consolidated. [Id.].  This consolidated case will hereinafter be referred to as **"Cause No. 02-2289."**

A sentencing hearing in Cause No. 02-2289 was held on June 24, 2003.  On August 6, 2003, state District Judge Albert S. Murdoch entered a Judgment, Sentence and Order, giving Johnson a suspended sentence and placing her on probation for a period of five years.  [Id.].

On April 10, 2006, the court filed an Order revoking and reinstating Johnson's probation upon her admission of probation violation, including the fact that in February 2005, Johnson was indicted on charges of trafficking a controlled substance, possession of a firearm/destructive device by a felon, and possession of drug paraphernalia. [*See* Docket Sheet in State v. Tekisha Johnson, No.

---

[2] All references to state court docket sheets herein are public record, and are available at the New Mexico court website:  http://www.nmcourts.gov/caselookup/app.  "[F]ederal courts . . . may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979).

[3] The two other cases were based on grand jury indictments in July and October 2002, on charges of fraudulent use of a credit card, in violation of N.M.S.A. (1978) § 30-16-33(A)(2) [Docket Sheet in State v. Tekisha Johnson, No. D-202-CR-200202095], and a charge of fraud, in violation of N.M.S.A. (1978) § 30-16-6 [Docket Sheet in State v. Tekisha Johnson, No. D-202-CR-200203607].

D-202-200500766, case discussed below; and Docket Sheet in Cause No. 02-2289].

On July 18, 2006, Defendant Erickson was assigned as Johnson's Probation Officer. [Doc. 19, Ex. A, at ¶ 6]. The "Offender History" for Johnson, maintained in the Criminal Management Information System ("CMIS") by the New Mexico Corrections Department ("NMCD") and submitted as part of the Martinez Report herein, includes the following notes about Johnson's case, as reported by Defendant Erickson:

On November 7, 2006, Johnson reported to Erickson. A urinalysis taken on that date was positive for Cocaine. Erickson contacted Judge Shepherd at the state district court, who ordered that Johnson complete 48 hours in MDC "by remand." Johnson was instructed to report to Probation, at 8:00 a.m. on November 13, 2006. [Doc. 19, Ex. B1, at 5]. Johnson did not appear at Probation at the appointed time, and when she came in at 10:15 a.m. she was arrested for failing to report as instructed. [Id.].

Upon her arrest, Erickson and another probation officer transported Johnson to her residence to search it. Officers and employees of Probation searched Johnson's residence and found "a wad of money" amounting to $3,800.00, and a baggie containing a white substance which field tested positive for Cocaine, 32 grams. Johnson was thereupon arrested and transported by APD to MDC on the new charges. Erickson noted that Judge Murdoch was notified of the situation, and that a probation violation report followed. [Id.].

The Offender History notes for November 14, 2006 include descriptions of probation violations including Johnson's arrest on November 13, 2006, misstatements of her marital status and association with a known felon, and failure to pay restitution. [Id., at 5-6]. On November 15, 2006, Erickson completed the probation violation report [Id., at 6], and the court received the report on November 16, 2006 [Docket Sheet in Cause No. 02-2289].

Erickson attended an initial probation violation hearing on January 3, 2007. At the hearing, Judge Murdoch entered an order regarding conditions of release, authorizing "CCP," *i.e.*, Community Custody Program. [Doc. 19, Ex. B1, at 6; Docket Sheet in Cause No. 02-2289]. A full hearing on the probation violation was held on February 28, 2007. Johnson admitted the violations and on March 1, 2007, Judge Murdoch entered an Order Revoking Probation and sentencing Johnson to final out the sentence at Metropolitan Detention Center ("MDC"), balance suspended and CCP ordered. [Id.]. Johnson was to report to Probation following her release from CCP, so that she could begin serving the consecutive term of probation ordered by Judge Candelaria, as discussed in the next section. [Doc. 19, Ex. B1, at 6].

### B. *Judge Candelaria's Case:  Cause No. 05-766*

Meanwhile, on February 21, 2005, Johnson was indicted by a New Mexico state grand jury on one count of trafficking a controlled substance with intent to distribute, possession of a firearm/destructive device by a felon, and possession of drug paraphernalia, in violation of N.M.S.A. (1978) §§ 30-31-20(A)(3), 30-7-16, and 30-31-25.1(A). [Docket Sheet in State v. Tekisha Johnson, No. D-202-200500766, hereinafter cited as "**Cause No. 05-766**"].

After several continuances of the trial setting, on December 7, 2005, Johnson entered a plea of no contest to count 1 of the indictment. On December 13, 2005, Judge Candelaria entered a Judgment, Sentence and Order, sentencing Johnson to nine years, suspended. She was placed on three years of supervised probation, consecutive to the probation she was serving at that time, *i.e.*, the probation ordered by Judge Murdoch in Cause No. 02-2289. [Id.; and Docket Sheet in Cause No. 02-2289]. The probation ordered by Judge Murdoch ended on August 29, 2007, and the three-year term of probation ordered by Judge Candelaria was to begin immediately thereafter. [Doc. 19, Ex. A, at ¶ 8; Ex. B1, at 7; Doc. 20, Ex. J, at 7, 8].

5

As noted above, Defendant Erickson was assigned as Johnson's probation officer on July 18, 2006. At that time, Johnson was still serving the term of probation ordered by Judge Murdoch in Cause No. 02-2289. In addition, she had been sentenced by Judge Candelaria to serve the consecutive term of probation in Cause No. 05-766, to begin in August 2007.

On May 17, 2007, Johnson was arrested by the Bernalillo County Sheriff's Department, and was then indicted by a state grand jury, on charges of trafficking, possession of cocaine, and child abuse. [Doc. 19, Ex. B1, at 10; Ex. D, at 1-2; Ex. E, at 3-4]. There is no indication on the record that Erickson was aware of this arrest at the time it happened, and he did not make a report of probation violation at this time.[4]

On August 27, 2007, Erickson attempted to contact Johnson, as her probation in Cause No. 02-2289 was scheduled to end soon and the term ordered in Cause No. 05-766 was scheduled to begin. The CCP program informed Erickson at that time that Johnson had been indicted in two new trafficking cases. Johnson reported to Erickson on August 30, 2007. On that date, she requested a new probation officer in a new unit, as "she feels . . . there is too much bad history [with Erickson] and she has been doing with CCP for the past 8 months and wants to start over with a new PO." Her request was denied, and Johnson stated she would be calling her attorney regarding her transfer request. [Doc. 19, Ex. B1, at 7-8]. No transfer was effected, and although a new probation officer was added to Johnson's case, Erickson continued to serve as Johnson's probation officer. [Id., at 8].

In early November 2007, Johnson reported new employment at Albuquerque Auto Auction. [Id., at 8-9]. She continued to report to probation throughout the fall and into early January 2008

---

[4]The materials supplied in the Martinez Report do not include a copy of the indictment on these charges, and the Court does not find in the docket sheets for the second Judicial District Court a record of an indictment on such charges on or about May 2007. However, Johnson has not disputed that she was, in fact arrested and indicted at that time and on those charges.

and was generally "doing well," Erickson noted, with continued employment and negative drug tests. [Id.].

Erickson states in his affidavit that in January 2008 he was contacted by two deputy district attorneys. He says that he discussed with them Johnson's probation violations occurring in November 2006, and her arrest on May 17, 2007, and that he was advised by the two deputy D.A.s to request an arrest warrant for the probation violations. He states further:

> I was under the impression that a Probation Violation Report could not be written based upon the understanding that case CR 2005-00766 was running consecutive to case CR 2002-02289, but I was advised by the Deputy District Attorney Mark Drebing and Deputy District Attorney Peg Holguin that there was a New Mexico case that permitted such action.

[Doc. 19, Ex. A, at ¶¶ 8-12].

Erickson prepared a probation violation report on January 15, 2008. He cited the following incidents constituting the violations: Johnson's trafficking arrest on November 13, 2006, and her misstatements as to her marital status and association with a known felon on November 13, 2006. [Doc. 19, Ex. B1, at 9-10]. In a January 18, 2008 addendum to the report, Erickson noted further violations including the May 17, 2007 arrest for trafficking, possession of cocaine and child abuse. [Doc. 19, Ex. D]. A bench warrant was issued for Johnson's arrest on January 23, 2008. [Id.], and a Motion to Revoke Probation was prepared by LynneAnn Maxwell, Assistant D.A., and was filed on January 25, 2008. [Doc. 19, Ex. A, at ¶ 15; Docket Sheet in Cause No. 05-766].

On January 29, 2008 at 9:13 a.m., Johnson either called or texted Erickson, questioning why a warrant for her arrest had been issued. She told Erickson she was going to see attorney about the warrant. Erickson states that he instructed her to call him when she arrived at the attorney's office "so I could deal with this issue." There is no indication that Erickson called Johnson's employer

7

at any time in January 2008, although there is a note that, at 10:57 a.m., he "called [Johnson]'s work to talk with [Johnson] and she was there." In this conversation, Johnson said she was going to her attorney's office at 11:30 a.m., and Erickson told her to report to him at 1:00 p.m. that day, "for her warrant." Johnson told him she found out about the warrant by checking the Internet every day. [Doc. 19, Ex. A, at ¶¶ 17-19; Ex. B1, at 11; Doc. 22, at 2].

Shortly after this phone call, Erickson informed officers at the Security Threat Intelligence Unit ("STIU") of the situation, and of Johnson's whereabouts. It is his understanding that three STIU officers were then sent to arrest Johnson. [Doc. 19, Ex. A, at ¶ 17; Ex. B1, at 11]. Erickson states that he took this action because "Johnson had been checking the court web page daily, Johnson was also known by more than fifty aliases (Exhibit B3), she had a record of claiming different dates of birth (Exhibit B4), and she had used a number of different social security numbers and other identification numbers (Exhibit B5)." [Doc. 19, Ex. A, at ¶ 20].

Johnson was arrested and booked at MDC for probation violation on January 29, 2008. [Doc. 19, Ex. A. at ¶ 13]. She remained in jail from January 29 to February 6, 2008. [Doc. 19, at 3; Doc. 22, at 3].

At the probation violation hearing on February 6, 2008,[5] Judge Candelaria dismissed the Motion to Revoke probation at the urging of Johnson's counsel, Leroy Duarte. Mr. Duarte stated that he had represented Johnson in the case before Judge Murdoch, and he argued that because the

---

[5]The transcript of the hearing gives a date of February 8, 2008. [Supplemental Martinez Report, Doc. 20, Ex. J]. However, the Docket Sheet for Cause No. 05-766 notes that an Order granting Johnson's motion to dismiss the probation violation charge was entered on February 6, 2008. The dismissal occurred at the probation violation hearing, which Erickson reports he attended on February 6, 2008. [Doc. 19, Ex. A, at ¶21; Ex. B1, at 11]. The Court does not resolve this discrepancy as it does not affect the result herein, but will assume a hearing date of February 6, 2008.

incidents forming the basis for the current Motion to Revoke occurred before the term of probation began in the present case and had already been presented to Judge Murdoch in the earlier case and "he took care of them," the current petition to revoke probation should be dismissed. [Doc. 20, Ex. J, at 9].

Judge Candelaria asked Assistant D.A. LynneAnn Maxwell when probation began in the current case, and when it ended in Judge Murdoch's case. She deferred to Erickson, who stated that Johnson started on probation in the present case in August 2007. Judge Candelaria dismissed the petition, citing the language of the Judgment and Sentence that the current probation was to run consecutive to Judge Murdoch's, indicating that her probation in the current case had not yet begun at the time the violations of 2006 and May 2007 occurred. [Doc. 20, Ex. J, at 7-10]. The transcript does not reflect any negative remarks from Judge Candelaria directed at Erickson.[6]

On February 7, 2008, Johnson reported to Erickson, stating she still lived at the same address and was still employed at Albuquerque Auto Auction. The next day, she called Erickson "to complain that this Officer and 'probation and parole' called her work and notified them of her current 2 pending charges and they fired her over that." [Doc. 19, Ex. B1, at 11].

Erickson's assignment to Johnson's case ended on August 27, 2008, when Judge Candelaria filed an Order Revoking Probation and sentenced Johnson to serve 2920 days (eight years) of

---

[6]Johnson states in her Complaint that, at the time he dismissed the petition for revocation, Judge Candelaria informed Erickson he lied to or misled the court. [Doc. 1, at 3, 7, 10]. In both of her Responses to Defendant's Martinez Report, Johnson asserts that the transcript is not an accurate transcription, as it fails to include the statements by Judge Candelaria in which he "call[ed] P.O. Eric Erickson a liar." She requests that the Court ordered Defendant to produce the original audio recording of the hearing. [Doc. 21, at 1; Doc. 22, at 7-8]. The Court declines this request. The transcript is certified as a true and correct transcript of the notes of Official Court Reporter Yvonne Baca-Marquez and is entitled to a presumption of regularity. In any event, the relevant issues in this case involve what the Defendant did, not what the judge said to him.

9

incarceration for probation violations occurring in March and July 2008. [Docket Sheet in Cause No. 05-766; Doc. 19, Ex. A, at ¶¶ 22-26; Ex. B1, at 11-16]. As noted above, Johnson is currently incarcerated in Grants, New Mexico.

## **Discussion**

The incidents of January-February 2008, described above, form the basis of Johnson's complaint in this action. Her allegations are that Erickson maliciously caused her arrest in January 2008 and further caused her subsequent loss of employment, that he misled Judge Candelaria by failing to reveal that the alleged probation violations had already been considered and rejected by another judge in a different case, and that he was trying to have her probation revoked before it had begun. She alleges these actions constituted violations of her constitutional rights. She further alleges that Erickson slandered her and that his actions constitute false imprisonment. [Doc. 1].

### Exhaustion

The general rule in cases brought under 42 U.S.C. § 1983 is that the plaintiff is not required to exhaust administrative remedies before filing suit in court. Statutory amendments in 1980 changed that and, later, with the advent of the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, the general rule of non-exhaustion is not longer applicable to prisoner suits – that is, actions brought by inmates based on unconstitutional prison conditions. Exhaustion is now mandatory in such suits. Booth v. Churner, 532 U.S. 731 (2001); Porter v. Nussle, 534 U.S. 516 (2002).

Johnson is an inmate and was incarcerated at the time she filed this action under Section 1983. However, her claims involve alleged actions by her probation officer done at a time when she was not incarcerated, and she does not complain about conditions of confinement. Because her Complaint was not "brought with respect to prison conditions," 42 U.S.C. § 1997e(a), there is no

requirement that she exhaust administrative remedies before filing suit under Section 1983. Porter v. Nussle, at 529 ("preincarceration claims fall outside § 1997e(a), for example, a Title VII claim against the prisoner's preincarceration employer, or, for that matter, a § 1983 claim against his arresting officer").

The Notice of Claim which Johnson filled out on April 21, 2008 and presumably filed with the State Risk Management Division [first attachment to Complaint, Doc. 1] is not relevant to the issue of exhaustion, as it would apply only to claims brought by Johnson under state law. As discussed below, this Court declines to exercise supplemental jurisdiction over such claims.

## Quasi-Judicial Immunity

Probation officers are absolutely immune from a civil suit for damages, when the challenged activities "are intimately associated with the judicial phase of the criminal process," that is, when they are performing "quasi-judicial functions." Tripati v. INS, 784 F.2d 345, 348 (10th Cir. 1986) (involving federal probation officers).

These "quasi-judicial functions" include recommendation for or against pretrial release and preparation of a presentence report, in which cases, the "probation service is an arm of the court. It is not an investigative arm for the prosecution. A presentence report is prepared exclusively at the discretion of and for the benefit of the court." Tripati, at 348, *quoting* United States v. Dingle, 546 F.2d 1378, 1380-81 (10th Cir. 1976). However:

> Absolute immunity for the probation officer in Tripati extended to the preparation of the pretrial bond or presentence report, not to every activity that a probation officer may undertake. Tripati is in keeping with a functional approach to absolute immunity because the court requires pretrial bond and presentence reports in handling the criminal docket. These functions of the probation officer are integrally related to the judicial function . . . . In contrast to the preparation of pretrial bond or presentence reports, other decisions involving the revocation of probation or parole by a probation or

> parole officer warrant only qualified, not absolute, immunity because such decisions are farther removed from the judicial process and are not initiated by courts. [Internal citations omitted].

Snell v. Tunnell, 920 F.2d 673, 692 n.18 (10th Cir. 1990).

The allegations against Erickson in this case involve actions taken in connection with issuance of a bench warrant and involvement in attempts to revoke Johnson's probation. These actions are "more akin to police work" than to the judicial function, and Erickson is thus entitled at most to qualified immunity, not to absolute quasi-judicial immunity. Snell, at 691.

### Qualified Immunity

Johnson sues her former probation officer under Section 1983, which authorizes a court to grant relief when a party's federally protected rights, that is, those rights arising under the Constitution or under federal laws, have been violated by a person acting under the color of state law. Pierce v. Gilchrist, 359 F.3d 1279, 1285 (10th Cir. 2004).

Erickson raises the defense of qualified immunity. [Answer, Doc. 13, at 3]. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

> Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 815 (2009).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability

. . . it is effectively lost if a case is erroneously permitted to go to trial." Id., *quoting* Mitchell v. Forsyth, 472 U.S. 511, 526, (1985).  Thus, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991).

In the context of summary judgment, once a defendant asserts the affirmative defense of qualified immunity, the burden shifts to the plaintiff to establish a "heavy two-part burden." Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995).  The plaintiff must establish that the defendant's actions violated a constitutional or statutory right of the plaintiff's, and also that the right was clearly established at the time of the defendant's unlawful conduct.  Gross v. Pirtle, 245 F.3d 1151, 1156 (10th Cir. 2001); Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000).  "To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . . [That is,] in the light of pre-existing law the unlawfulness must be apparent."  Albright v. Rodriguez, at 1535 [internal citations and punctuation omitted].

Johnson asserts that Erickson's actions in causing her arrest in January 2008, and allegedly misleading the court, violated her constitutional rights and caused her to be terminated from her job. The specific constitutional right she cites is her right to be free from cruel and unusual punishment. The Court finds that the Eighth Amendment's guarantee against cruel and unusual punishment is inapplicable in the context of a suit against a probation officer for his role in having the plaintiff arrested on a claim of probation violation.  *See*, Presley v. Morrison, 950 F. Supp. 1298, 1300, 1301 (E.D. Pa. 1996):

> Presley alleges that he was unlawfully arrested, subjected to cruel and
> unusual punishment, and denied due process of law when Morrison,
> a probation officer, arrested him for an alleged violation of his

13

>probation . . . .  To make out a claim for cruel and unusual punishment under the Eighth Amendment, a plaintiff must show that punishment has been imposed which included "elements of severity, arbitrary infliction, unacceptability in terms of contemporary standards, or gross disproportion...." <u>Ingraham v. Wright</u>, 430 U.S. 651, 658, 97 S.Ct. 1401, 1405, 51 L.Ed.2d 711 (1977). Not only has plaintiff failed to demonstrate that any of these elements were present, he has failed to allege that Morrison punished him at all . . . .  With regard to his arrest, Presley does not have an Eighth Amendment cruel and unusual punishment claim.

Rather, the facts alleged in Johnson's Complaint regarding her arrest and subsequent proceedings surrounding allegations of probation violation are more appropriately analyzed under the Fourth Amendment's prohibition against unreasonable searches and seizures, and her Fourteenth Amendment right not to be deprived of her liberty without due process of law. <u>Id.</u>; <u>Whiteley v. Warden</u>, 401 U.S. 560 (1971); <u>United States v. McCarty</u>, 82 F.3d 943 (10th Cir. 1996); <u>Pierce v. Gilchrist</u>, at 1285-86.

Erickson states that he was advised by two deputy district attorneys that New Mexico case law permits a court to enter a revocation order based on a violation occurring prior to the start of the term of probation, and thus that his actions in seeking to have Johnson's probation revoked in Cause No. 05-766 on the basis of the November 2006 and May 2007 incidents was justified by law and did not violate her constitutional rights.

The advice given by the district attorneys was correct.  In New Mexico, a court is given broad authority to grant clemency and structure rehabilitation by suspending a sentence and ordering probation, and by revoking probation when the probationer violates its terms.  "[W]e view the probation provisions of our state's criminal code . . . as indicative of the Legislature's intent to give trial courts broad discretion to sentence defendants to probationary terms and strictly monitor their compliance with an eye toward the goal of prompt and effective rehabilitation." <u>State v. Rivera</u>, 134

14

N.M. 768, 774, 82 P.3d 939, 945 (2003).

Under this principle, state district courts have authority to revoke probation "at any time subsequent to the entry of judgment and prior to the expiration of the sentence." State v. Padilla, 106 N.M. 420, 422, 744 P.2d 548, 550 (Ct. App. 1987). This means that a violation occurring while the convicted defendant is still incarcerated (*e.g*, escape), or while s/he is serving an earlier, consecutive term of probation or parole, may serve as a basis for revocation in a case in which the probationary term has not yet commenced. Id.; State v. Martinez, 108 N.M. 604, 775 P.2d 1321 (Ct. App. 1989).

> [W]e reject Defendant's argument that the district court lacks jurisdiction to revoke probation unless a defendant is serving a portion of the sentence for which probation is being revoked. A court grants probation as a matter of grace in the hopes that a defendant may be rehabilitated without being incarcerated, and, in its discretion, the court may revoke probation when the goal of rehabilitation is not being achieved, even if a defendant has not yet commenced serving the probationary term being revoked.

State v. Lopez, 141 N.M. 293, 298, 154 P.3d 668, 673 (2007).

Thus, Judge Candelaria's authority to revoke Johnson's probation in Cause No. 05-766 began on the date he sentenced her, December 13, 2005, and such authority was still in effect on February 6, 2008, the date he was informed of the November 2006 and May 2007 violations and denied the motion to revoke. This is true even though Johnson's term of probation in Cause No. 05-766 did not commence until August 2007.

While it would not have been improper for the judge to revoke probation on the basis of violations occurring prior to the commencement of the term of probation which he had ordered, it was entirely within his discretion to do so or not. *See*, State v. Grossetete, 144 N.M. 346, 348, 187 P.3d 692, 694 (Ct. App. 2008):

> [T]he court had jurisdiction to revoke probation even though the probation term had not yet commenced when the petition was filed . . . [T]he court considered what was presented in favor of revocation, recognized that it had jurisdiction to revoke Defendant's probation, but exercised its discretionary authority to deny and dismiss the State's petition.

The fact that Judge Candelaria decided not to revoke Johnson's probation at that point does not necessarily indicate that Erickson did anything wrong in seeking revocation. Johnson claims that Judge Candelaria called Erickson a "liar" and said that he misled the court; however, the transcript of the February 6, 2008 hearing contradicts these assertions and, as noted above, the Court has no reason to doubt the accuracy of the transcription.

Johnson's primary complaint, however, appears to be that she was unjustly arrested on assertions of probation violations that had already been reported to the court and resolved by a different judge.[7] Erickson did in fact include the November 2006 violations, which had already been presented to Judge Murdoch, in his probation violation report of January 15, 2008. He also included two new instances of violation in the report of that date: the fact that, on May 17, 2007, Johnson was in possession of cocaine and was arrested by the Bernalillo County Sheriff's Department for trafficking and possession, as well as child abuse. So far as the record indicates, the May 2007 violations had never been reported to any other judge. Alone, they could have formed the basis for revocation in Cause No. 05-766 had Judge Candelaria chosen to revoke.

The Court finds that qualified immunity applies to Erickson's actions in this matter. It is clear that Erickson knew he had earlier presented the November 2006 violations to another judge

---

[7]Johnson alleges that "Judge Murdoch previously chose not to revoke" her probation when the November 2006 violations were presented to him. This is inaccurate. Judge Murdoch considered the probation violation report which included the November 2006 violations and entered an order revoking Johnson's probation, ordering her to "final out" in MDC on CCP. [Docket Sheet in Cause No. 02-2289, entry for 03/01/07; Doc. 19, Ex. A, at ¶8; Ex. B1, at 6].

and that those violations formed the basis for Judge Murdoch's March 2007 ruling. However, Erickson's re-use of the November 2006 incidents in his January 2008 report does not constitute a constitutional violation; rather, the practice is acceptable as part of the wide discretion afforded probation officers:

> The same actions by a probationer can lead to direct punishment and can also constitute the basis on which his probation for a prior offense is revoked . . . . It follows, therefore, that revocation of probation or supervised release in two prior offenses as the result of a single action is similarly permissible. [Internal punctuation omitted].

United States v. Clark, 984 F.2d 319, 320 (9th Cir. 1993).

The court in Clark further noted that a probation violation subjects the violator to deferred punishment for crimes for which she was already convicted; she is not being directly prosecuted for the probation violation at all and thus, double jeopardy is not implicated.

Even if the use of a single violation to support a request for probation revocation in two different cases were improper, it would not rise to the level of a constitutional violation in this case in light of the fact that Erickson's January 2008 report also included other very serious violations, which would have been sufficient for revocation had Judge Candelaria exercised his authority to do so. There is nothing in the record to indicate that Erickson reported incidents that never occurred, nor that he "lied to" the court, as Johnson claims. *See, e.g.*, Russ v. Uppah, 972 F.2d 300 (10th Cir. 1992) (if the plaintiff can prove his allegations that his parole officer held him without charge, then presented false information in order to have his parole revoked, qualified immunity would not protect the officer).

And, while Erickson's report of the May 2007 violations was not made until January 2008, this eight-month delay does not support a claim of constitutional violation, in that Johnson has not

shown that she suffered any particular prejudice from the delay. *See*, State v. Sanchez, 94 N.M. 521, 523-34, 612 P.2d 1332, 1334 (Ct. App. 1980).

The Court finds that Johnson has not demonstrated that any of her constitutional rights, including the right to due process and rights to be free from unreasonable seizure and cruel and unusual punishment, were violated by reason of any action on the part of Defendant Erickson leading to her arrest on January 29, 2008 and the proceedings held thereafter. The Court thus recommends that Erickson be granted summary judgment on grounds of qualified immunity.

## State Law Claims

Johnson also includes in her Complaint allegations that Erickson slandered and/or libeled her, and that he was responsible for her false imprisonment. Having recommended dismissal of Johnson's constitutional claims, the Court declines to exercise supplemental jurisdiction over these claims arising under state law. 28 U.S.C. § 1367(c)(3); Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990); United States v. Botefuhr, 309 F.3d 1263, 1273 (10th Cir. 2002):

> [W]hile we have suggested that it is appropriate, perhaps even advisable, for a district court to retain supplemented state claims after dismissing all federal questions when the parties have already expended a great deal of time and energy on the state law claims, . . . . we have held that, absent such a showing, a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.

Although the Court declines supplemental jurisdiction over these claims, it should be noted that there is nothing on the record to support Johnson's allegations that Erickson slandered her and thereby caused her to be fired. In addition, sovereign immunity under the New Mexico Tort Claims Act would likely prevent claims for slander and false imprisonment against a probation officer.

Conclusion

The Court recommends with respect to the constitutional claims that Defendant's assertion of qualified immunity be accepted, and that supplemental jurisdiction over the state law claims be declined. Plaintiff's request that summary judgment be granted in her favor should be denied, and summary judgment should instead be granted in favor of Defendant.

**Recommended Disposition**

That Plaintiff's claims against Defendant be dismissed and that her Complaint be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge